# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-169
**Filed: November 19, 2018**
Unpublished

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| WENDY BORDERS, | * |
| | * |
| Petitioner, | *   Fact Ruling; Influenza ("Flu") Vaccine; |
| | *   Shoulder Injury Related to Vaccine |
| v. | *   Administration ("SIRVA"); Onset; |
| | *   Special Processing Unit ("SPU") |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Jennifer Leigh Reynaud*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON FACTS[1]

**Dorsey,** Chief Special Master:

On February 6, 2017, Wendy Borders ("petitioner" or "Ms. Borders") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*, (the "Vaccine Act" or "Program"). Petitioner alleges she suffered "left shoulder injuries" that were "caused in fact" by an influenza ("flu") vaccine she received on October 21, 2015. Petition at 1. The case was assigned to the Special Processing Unit ("SPU").

Before the undersigned is petitioner's motion for a fact ruling on the issue of onset. After a review of the record as a whole, and for the reasons set forth below, the undersigned finds by preponderant evidence that Ms. Borders's left shoulder pain occurred within forty-eight hours of her October 21, 2015 flu vaccination.

---

[1] The undersigned intends to post this decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished decision contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

**I.     Procedural History**

In support of her petition, Ms. Borders filed medical records (Exs. 1-6) and an affidavit (Ex. 7). ECF Nos. 1 & 9. An initial status conference was held on March 24, 2017. Order, ECF No. 10. In accordance with the order that proceeded this conference, petitioner filed an additional medical record on March 30, 2017 (Ex. 8). ECF No. 11.

On August 23, 2017, respondent filed a status report indicating that he had determined the case may be appropriate for settlement. ECF No. 20. The parties were provided an opportunity to explore an informal resolution. Orders, ECF Nos. 23, 26, 28.

On January 19, 2018, petitioner reported that the parties had reached an impasse in settlement negotiations. ECF No. 29. A status conference was held on February 1, 2018, to discuss the reported impasse. Order, ECF No. 30. Following this conference, petitioner filed a status report stating a preference for briefing on the issue of onset in lieu of scheduling a fact hearing. *Compare* Order, ECF No. 30, *with* Status Report, ECF No. 33. A deadline was set for petitioner's motion for a ruling on the issue of onset. ECF No. 34.

On May 17, 2018, petitioner filed her motion for a fact ruling as to the issue of onset. Petitioner's Motion ("Mot."), ECF No. 39. In support of this motion, petitioner filed a supplemental affidavit (Ex. 11), as well as witness affidavits from her husband, Jeffrey L. Borders, M.D., Ph.D. (Ex. 9), and her coworker, Pamela Finan (Ex. 10). ECF Nos. 35, 38.

Respondent filed a response to petitioner's motion on June 14, 2018. Respondent's Response ("Resp."), ECF No. 42. Petitioner did not file a reply.

The motion is now ripe for ruling.

**II.    Relevant Facts**

Petitioner received a flu vaccine in her left deltoid on October 21, 2015, at Auburn Pharmacy, in Parkville, Missouri. Petitioner's Exhibit ("Ex.") 1 at 2 (vaccination record). Petitioner had not reported any left shoulder injuries prior to this flu vaccination. Ex. 7; Ex. 11 at ¶ 4; Ex. 3 at 13-29 (pre-vaccination records).

Petitioner attests that the October 21, 2015 flu vaccine was administered "too high" at "about one finger's width below the acromion process." Ex. 11 at ¶ 4. She describes "aching" shoulder pain within hours of vaccination and recalls that "[b]y the tenth day, my left shoulder was so stiff I could barely move it." *Id.* at ¶¶ 5-6. Petitioner expected it to be sore for a few days after so she took naproxen and hoped the pain

would resolve on its own.  *Id.* at ¶ 5.  Petitioner's husband, Dr. Borders, avers that on the day of her flu vaccination, petitioner confided to him that she believed it was administered incorrectly.  Ex. 9 at ¶ 3.  Dr. Borders recalls that his wife "had a lot of pain and couldn't sleep on that shoulder" that night.  *Id.*

Pamela Finan, who volunteered with petitioner at an animal shelter, attests that on October 27, 2015, petitioner complained of shoulder pain and lack of mobility in her left arm.  Ex. 10 at ¶ 4.  Ms. Finan also recalls that they discussed petitioner's pain in relation to the flu vaccination days before.  *Id. at* ¶ 5-6.

On November 23, 2015, Ms. Borders underwent an MRI of her left shoulder interpreted by her husband, radiologist Dr. Jeffery Borders.  Ex. 2 at 38-39.  The MRI revealed prominent tendinitis and bursitis.  *Id.*  A small left shoulder effusion was also identified.  *Id.*  "New-onset severe left shoulder pain," is noted in the history included on the MRI report.  *Id.*

On December 4, 2015, petitioner presented to her primary care physician ("PCP"), Dr. Bridgett Cooper, for an annual physical and reported a history of left shoulder bursitis and tendonitis.  Ex. 3 at 10-12, 34.  Petitioner reported "Aleve" as a current medication taken as needed every twelve hours.  *Id.* at 10.  Dr. Cooper's musculoskeletal assessment was "normal" and no treatment was ordered for petitioner's shoulder.  *Id.* at 11.  Petitioner was given a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine in her left deltoid.  *Id.* at 11.

Petitioner returned to Dr. Cooper about five days later, on December 9, 2015, to complete recommended bloodwork. Pet. Ex. 3 at 8.  The history from this visit indicates "Left shoulder[]bursitis/tendonitis, 11/2015."  *Id.*

Petitioner presented to orthopedic specialist Christopher A. Bagby, M.D on December 21, 2015, for "left shoulder pain since 10/24/2015 after moving some heavy objects while she was gardening."  Ex. 6 at 92.  Dr. Bagby further noted:

> She did have a flu shot today [sic] after this and she states that the shot was given very high just under the lateral border of the acromion she tells me. She has had an MRI scan of her shoulder which did show bursitis changes with no rotator cuff tear. She has been taking Naprosyn with continued shoulder pain.

*Id.* at 91.

Dr. Bagby noted tenderness over the left lateral shoulder and positive impingement signs.  *Id.*  He diagnosed petitioner with left shoulder impingement syndrome with bursitis, and noted a possible inadvertent flu shot injection subacromially.  *Id.*

3

Petitioner presented for an initial physical therapy ("PT") examination on January 12, 2016, and reported left shoulder pain since receipt of a flu vaccination on October 21, 2015.  Ex. 5 at 29.

Petitioner returned to Dr. Bagby for a follow-up on February 25, 2016, and again reported left shoulder pain since she received the flu shot on October 21, 2015.  Ex. 6 at 79.  Dr. Bagby's examination revealed significant stiffness in her left shoulder with about 120 degrees of forward flexion, about 60 degrees of passive external rotation, and 0 degrees with internal rotation.  He diagnosed petitioner with left shoulder impingement syndrome with bursitis, likely from subacromial injection, and with left frozen shoulder.  *Id.*

After seven sessions, petitioner was discharged from PT on March 16, 2016, with the following assessment; "demonstrates little progress with [range of motion] and stretching is difficult, but less painful.  Recommend patient follow up with surgeon to discuss other medical management of symptoms and impairments."  Ex. 5 at 15.

On March 24, 2016, petitioner returned to Dr. Bagby with complaints of continued significant stiffness and pain in her left shoulder.  Upon examination, Dr. Bagby recommended left shoulder manipulation with left shoulder arthroscopy with capsular release.  Ex. 6 at 80.

On May 9, 2016, Ms. Borders underwent a left shoulder manipulation under anesthesia and left shoulder arthroscopy with scar tissue debridement with capsule release and subacromial decompression.  Ex. 4. at 21-23.  In the operative report for petitioner's arthroscopy shoulder surgery, Dr. Bagby wrote, "[t]he patient is a 61- year-old white female who developed left shoulder pain around 10/21/2015 after receiving a flu shot . . . [s]he did say the flu shot was very high, under the acromion."  *Id.* at 53.

On May 16, 2016, she returned to Dr. Bagby for a postoperative evaluation.  Dr. Bagby advised her to continue physical therapy.  *Id.* at 27.

On May 10, 2016, petitioner returned to PT for a series of eleven physical therapy sessions which she completed by June 6, 2016.  Ex. 5 at 24-26; 31-39; 41-43.  She was discharged secondary to minimal pain and accepted a home exercise plan.  *Id.*

On June 10, 2016, Ms. Borders returned to Dr. Bagby for a follow up.  *Id.* at 40.  Dr. Bagby noted near full active internal rotation, and advised her to follow up as needed.  *Id.*  Petitioner returned to her PCP in December 2016 and reported to be "doing well since the left shoulder surgery for bursitis after an ill placed flu vaccination."  Ex. 8 at 3.

### III.     Applicable Legal Standard

4

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. 42 U.S.C. § 300aa–13(a)(1)(A). To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

There are situations in which compelling testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006) ("[L]ike any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking."); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005) ("Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent.") (quoting *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992)). Ultimately, a determination regarding a witness's credibility is needed when determining the weight that such testimony should be afforded. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

Despite the weight afforded medical records, special masters are not bound rigidly by those records in determining onset of a petitioner's symptoms. *Vallenzuela v. Sec'y of Health & Human Servs.*, No. 90-1002V, 1991 WL 182241, at *3 (Fed. Cl. Spec. Mstr. Aug. 30, 1991); *see also Eng v. Sec'y of Health & Human Servs.*, No. 90-1754V, 1994 WL 67704, at *3 (Fed. Cl. Spec. Mstr. Feb. 18, 1994) (Section 13(b)(2) "must be construed so as to give effect also to § 13(b)(1) which directs the special master or court to *consider* the medical records (reports, diagnosis, conclusions, medical judgment, test reports, etc.), but does not require the special master or court *to be bound* by them").

## IV.     Discussion

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table ("Table"). *See* Vaccine Injury Table: Qualifications and aids to interpretation. 42 C.F.R. § 100.3(c)(10). Although petitioner's claim was filed before SIRVA was added to the Table, and thus cannot be found to be a SIRVA Table injury,

the undersigned's findings are informed by the Qualifications and Aids to Interpretation for SIRVA criteria used to evaluate such claims. The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.; see also* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, 80 Fed. Reg. 45132, Notice of Proposed Rulemaking, July 29, 2015 (citing Atanasoff S, Ryan T, Lightfoot R, and Johann-Liang R, 2010, *Shoulder injury related to vaccine administration (SIRVA)*, Vaccine 28(51):8049-8052).

The parties dispute whether petitioner has satisfied the second SIRVA criteria: "[pain occur[ring] within the specified time-frame." To meet this criteria, petitioner must show by preponderant evidence that her left shoulder pain began within forty-eight hours of her October 21, 2015 flu vaccination. 42 U.S.C. § 300aa–13(a)(1)(A); 42 C.F.R. § 100.3(c)(10).

Petitioner alleges that the onset of her left shoulder pain occurred immediately after receiving the flu vaccination in the same shoulder on October 21, 2015. Mot. at 7-9. Respondent offers two arguments asserting that petitioner has not established that the onset of her pain occurred within this time frame.[2] Resp. at 5-7.

First, respondent posits that petitioner's inability to ascribe the onset of her shoulder pain to her flu vaccination prior to Dr. Bagby's December 21, 2015 exam undermines her onset claim.[3] Resp. at 6 (citing Ex. 6 at 90 (orthopedic intake form in which petitioner reports left shoulder pain following gardening)). Respondent argues that, as a nurse aware of the importance of providing a complete and accurate history, petitioner presumably would have noted on her orthopedist's history form that her pain immediately followed her October 21, 2015 flu vaccination. Resp. at 6. Respondent's argument misses the mark. At this appointment, petitioner reported to Dr. Bagby that

---

[2] Respondent's brief incorrectly states the date of vaccination as October 15, 2015. Resp. at 1, 5. The undersigned deems this incorrect date to be a typographical error as respondent does not otherwise dispute the date of vaccination. *See* Resp. at 2, 4-5 (discussing October 21, 2015 vaccination date).

[3] Respondent refers to this record as "the most contemporaneous." Resp. at 6. To the contrary, the undersigned notes petitioner has provided earlier medical records documenting her shoulder condition. *See, e.g.,* Ex. 3 at 10, 39.

6

her shoulder pain began <u>after</u> she had done some gardening and then received a flu vaccination "very high" in her left shoulder. Ex. 6 at 91.

Petitioner's omission of this information on the orthopedist's intake form does not appear relevant to assessing the onset of her shoulder pain. Petitioner states that she was unaware that a flu vaccination could cause a shoulder injury before talking to Dr. Bagby. Ex. 11 at ¶¶ 7, 10. Petitioner explains that she believed her pain "must have been [caused] by something [she] did," so she speculated to Dr. Bagby that her work gardening may have caused her shoulder pain. *Id.*; Mot. at 2-3. The undersigned considers it reasonable that petitioner would discuss any potential origin of her pain with her doctor when seeking diagnosis and treatment. Moreover, Dr. Bagby's records align with petitioner's explanation. Ex. 6 at 92. Appreciating both petitioner's November 2015 MRI scan and report of gardening, Dr. Bagby provided an impression of "possible inadvertent flu shot injection subacromially." *Id.* Dr. Bagby apparently dismissed petitioner's speculation that gardening caused her pain.

As noted by respondent (Resp. at 6), Dr. Bagby's record is not entirely clear:

> "[t]he patient is a 61-year-old white female who has had left shoulder pain since 10/24/2015 after moving some heavy objects while she was gardening. She did have a flu shot *today* after this and she states that the shot was given very high . . . "

Ex. 6 at 91 (emphasis added). Notwithstanding the apparent typographical error "today", the undersigned appreciates that this record illustrates a general timeline in which petitioner recollects gardening then receiving a flu vaccination prior to the start of her shoulder pain. Therefore, given that the October 21, 2015 date of vaccination is not disputed, the undersigned interprets this record to be consistent with petitioner's allegation that her pain followed soon after that vaccination. As this record appears to be the only instance in which petitioner reports her pain beginning October 24, 2015, rather than October 21, 2015, the undersigned gives it less weight and instead looks to the record as a whole. *Burns.,* 3 F.3d at 417; *Sanchez,* 2013 WL 1880825, at *3.

Respondent next argues that petitioner's left shoulder pain appears to have resolved by her December 4, 2015 appointment with her PCP, Dr. Cooper. Resp. at 6-7 (citing Ex. 3 at 8-12, 34). During this appointment, petitioner provided a history of her left shoulder pain and ultimately received a left deltoid Tdap vaccination. Ex. 3 at 34. Respondent argues that it is unlikely petitioner's PCP would have proceeded with a Tdap vaccination in petitioner's left deltoid if petitioner was in pain. Resp. at 6-7. Petitioner's deference to her doctor's discretion as to the appropriateness of her December 4, 2015 Tdap vaccination is not relevant to the undersigned's assessment of onset. To the extent that respondent is raising an argument as to the duration of petitioner's injury, the undersigned declines to infer that petitioner's pain resolved before December 4, 2015. To the contrary, following her December 4, 2015 PCP appointment, petitioner continued to consistently seek care for her left shoulder pain while reporting an October 2015 onset. *See, e.g.,* Ex. 6 at 19, 92-94; Ex. 4 at 12, 15; Ex. 5 *passim*.

7

In summary, respondent relies heavily upon the fact that petitioner did not initially associate the start of her left shoulder pain with her October 21, 2015 flu vaccination. Resp. at 5-7. However, the undersigned finds petitioner's explanation for this persuasive, particularly when viewed in concert with the histories provided throughout the remainder of her treatment records. Ex. 6 at 19, 90-92; Ex. 4 at 12,15; Ex. 5 at 14, 29. Medical records generally "warrant consideration as trustworthy evidence." *Cucuras,* 993 F.2d at 1528. In this case, Ms. Border's medical records, including those from her PCP, orthopedist, and PT, overwhelmingly identify her October 21, 2015 flu vaccination as the start of her left shoulder pain. Ex. 6 at 19, 92-94; Ex. 4 at 12, 15; Ex. 5 at 14, 29. Additionally, the undersigned deems petitioner's sworn statements, and the statements of her husband and coworker to be reasonable and credible. Exs. 7, 9-11. Thus, the undersigned finds that petitioner has provided preponderant evidence that her left shoulder pain began within 48 hours of her October 21, 2015 flu vaccination.

## V.     Conclusion

Thus, the undersigned finds, based on the record as a whole, that the onset of petitioner's left shoulder pain occurred within forty-eight hours of the flu vaccination she received on October 21, 2015.

The parties are encouraged to again consider an informal resolution of this claim. **Petitioner shall file a joint status report by no later than <u>Friday, December 21, 2018</u>, updating the court on the status of the parties' settlement discussions.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master